IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL S., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:23-cv-3715 |
| v. | ) | |
| | ) | Magistrate Judge Jeannice W. Appenteng |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Paul S. seeks to overturn the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. After reviewing the record and the parties' arguments, the Court grants the Commissioner's motion and denies plaintiff's motion.

**BACKGROUND**

Plaintiff applied for SSI on November 16, 2020, alleging disability since March 14, 2020 due to flare-ups with pain and swelling in the ankles, vision issues in the left eye, headaches, hydrocephalus, early dementia, sleep apnea, stroke, and some balance issues. Administrative Record ("R.") 208-12, 251. Born in July 1971, plaintiff was 49 years old as of the application date, making him a younger person (under age 50). 20 C.F.R. § 416.963(c); R. 208. He subsequently changed age

categories to a person closely approaching advanced age (age 50-54). 20 C.F.R. § 416.963(d). Plaintiff graduated from high school and lives with his daughter and young grandson. R. 39, 40. His past jobs include digital cable installer, laborer, maintenance worker, and tech support worker, but he has not engaged in substantial gainful activity since the March 14, 2020 alleged onset date. R. 252-53.

The Social Security Administration denied plaintiff's applications initially on July 21, 2021, and upon reconsideration on February 23, 2022. R. 60-98. Plaintiff filed a timely request for a hearing and on December 21, 2022, he appeared before an administrative law judge ("ALJ"). R. 35. The ALJ heard testimony from plaintiff, who was represented by counsel, and from vocational expert Diamond Warren (the "VE").[1] R. 37-59. On January 4, 2023, the ALJ found that plaintiff's obesity, obstructive sleep apnea, restless leg syndrome, neurocognitive disorder, generalized anxiety disorder, mood disorder, migraine headaches, hypertension, COPD, and degenerative disc disease are severe impairments, but that they do not alone or in combination with plaintiff's non-severe impairments meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19-21.

After reviewing the evidence, the ALJ concluded that plaintiff has the residual functional capacity ("RFC") to perform light work with several postural, environmental, and non-exertional limitations. R. 18-23. The ALJ accepted the VE's testimony that a person with plaintiff's background and this RFC could not perform any of plaintiff's past work, but could perform a significant number of other jobs

---

[1] The hearing was held telephonically due to the COVID-19 pandemic.

available in the national economy. R. 24-25. As a result, the ALJ concluded that plaintiff was not disabled at any time from the November 16, 2020 application date through the date of the decision. R. 25. On April 11, 2023, the Appeals Council denied plaintiff's request for review. R. 1-5. That decision stands as the final decision of the Commissioner and is reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Whitney v. Astrue*, 889 F. Supp. 2d 1086, 1088 (N.D. Ill. 2012).

In support of his request for reversal or remand, plaintiff argues that the ALJ: (1) made a flawed mental RFC assessment; and (2) erred in evaluating the opinion evidence of record.[2] For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## DISCUSSION

### A.    Standard of Review

A claimant is disabled within the meaning of the Social Security Act if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing whether: "(1) the claimant is presently employed; (2) the

---

[2] Arguments not specifically addressed in this opinion were not reasonably developed and have been waived. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

3

claimant has a severe impairment or a combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021); *see also Melvin J. v. Kijakazi*, No. 20 C 3284, 2022 WL 2952819, at *2 (N.D. Ill. July 26, 2022) (citing 20 C.F.R. § 416.920(a)). If the claimant meets his burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Butler*, 4 F.4th at 501.

In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citation omitted). "[S]ocial-security adjudicators are subject to only the most minimal of articulation requirements," and ALJs need only provide "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1053-54 (internal quotations omitted) (in "shorthand

4

terms," an ALJ must build a "logical bridge from the evidence to his conclusion."); *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

**B. Analysis**

   **1. Mental RFC**

Plaintiff argues that the case must be reversed or remanded because the RFC does not adequately account for his mental limitations. Dkt. 13 at 8-12; Dkt. 23 at 3. A claimant's RFC is the maximum work that he can perform despite any limitations. 20 C.F.R. § 416.945(a)(1); SSR 96-8p. "[T]he responsibility for the RFC assessment belongs to the ALJ, not a physician, [but] an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Bronwen M. v. Kijakazi*, No. 22 C 50153, 2023 WL 6388207, at *2 (N.D. Ill. Sept. 29, 2023) (quoting *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012)).

The ALJ determined that despite plaintiff's moderate limitations in concentration, persistence, or pace, and in understanding, remembering, or applying information, he can perform simple, routine, repetitive work involving simple work decisions and only occasional workplace changes. R. 20, 21. Plaintiff also needs a one- to two-minute break each hour in order to refocus. R. 21. In reaching this conclusion, the ALJ was generally persuaded by the state agency psychological reviewers who agreed that despite plaintiff's moderate mental limitations, he remains capable of those exact restrictions: understanding, remembering, and carrying out simple instructions on a consistent basis,

5

performing simple, repetitive tasks on a consistent basis; making simple work-related decisions; and adapting to changes in a routine work setting. R. 25, 78, 80, 96. *See Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *15 (N.D. Ill. Dec. 19, 2019) ("The opinion of a non-examining state agency consultant is the type of medical evidence an ALJ may rely upon to craft a claimant's R[F]C").[3]

Plaintiff objects, arguing that the ALJ failed to properly consider contrary opinion evidence supporting greater restrictions. Since plaintiff filed his claim in November 2020, the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. 20 C.F.R. § 416.920c(a). *See also Robert J. L. v. O'Malley*, No. 20 CV 50444, 2024 WL 809091, at *2 (N.D. Ill. Feb. 27, 2024). Instead, the ALJ was required to determine the "persuasiveness" of each medical opinion considering: "supportability, consistency, the medical professional's relationship with the claimant (including the length of the treatment relationship, frequency of examinations, and purpose and extent of the treatment relationship), specialization, and other facts that tend to support or contradict a medical opinion." *Cain v. Bisignano*, 148 F.4th 490, 496-97 (7th Cir. 2025) (citing 20 C.F.R. § 416.920c(c)(1)-(5)). "The most important of these factors are supportability and consistency"; indeed, "[t]he ALJ must explain its consideration of these two factors but need not address the remaining factors." *Id*. at 497.

On June 14, 2021, consultative examiner Michael E. Stone, Psy.D., assessed plaintiff with generalized anxiety disorder, major depression, and a mild to

---

[3] Since the RFC is not for "unskilled" work, plaintiff's insistence that he is unable to perform unskilled work is immaterial. Dkt. 13 at 9.

6

moderate neurocognitive disorder. R. 532. He noted that plaintiff exhibited poor memory; fair ability to relate to others; poor ability to understand, remember and follow simple directions; poor ability to maintain attention required to perform simple, repetitive tasks and sustain concentration, persistence, and pace; and poor ability to adapt and withstand stress. R. 532-33. Plaintiff says this opinion reflects significantly impaired mental functioning, which the ALJ failed to address. Dkt. 13 at 10. The Court disagrees.

The ALJ expressly acknowledged Dr. Stone's evaluation, including the assessed diagnoses and areas where plaintiff performed poorly. R. 24-25. But the ALJ explained that Dr. Stone's findings were inconsistent with other evidence of record showing normal functioning. For example, when plaintiff saw his internist Usman Umar, M.D., on July 13, 2021, just one month after Dr. Stone's exam, he denied experiencing any symptoms of anxiety or depression at all. R. 25, 606. His mental status on September 24, 2021 was similarly unremarkable with normal attention and judgment. R. 735. And though plaintiff was "stressed" in January 2022, R. 608, exams in August and November 2022 were normal. R. 1183, 1191, 1193 (no depression, anxiety, or agitation). This was so even though plaintiff never received any mental health treatment or medication throughout this period. Plaintiff fails to explain how this evidence supports the extreme mental deficits reflected during Dr. Stone's exam. *See Alejandrina A. v. Kijakazi*, No. 20 CV 4089, 2023 WL 2539239, at *12 (N.D. Ill. Mar. 16, 2023) (citing *Karr v. Saul*, 989 F.3d

7

508, 512 (7th Cir. 2021)) (ALJ properly discounted physician's statement that was "inconsistent with other objective evidence in the record.").

Further undermining Dr. Stone's assessment was evidence that plaintiff embellished his symptomology. R. 24. In April 2022, plaintiff underwent neuropsychological testing and complained of ongoing problems with memory, language, attention, decision-making, and mood. R. 24, 25, 990-91. Yet his performance across cognition measures was so inconsistent with his actual level of functioning that the examiner suspected "exaggeration of symptoms." R. 24, 993-94 (noting that plaintiff "displayed better performance on more difficult tasks at times" and had "suboptimal" and "poor" test engagement, and stating that "ongoing unemployment and desire for disability income likely plays a role in his presentation more than a medical etiology."). Plaintiff himself testified at the hearing that he can follow written instructions very well and has no problems concentrating on small tasks. R. 52, 265. Even plaintiff's daughter indicated that her father's mental issues are "not . . . as serious as my dad make it [sic] out to be." R. 25, 992. Given plaintiff's routinely unremarkable mental status exams, the ALJ reasonably discounted Dr. Stone's dire assessment of plaintiff's functioning. *See Gwendolyn B. v. Saul*, No. 20 C 3244, 2021 WL 1812879, at *8 (N.D. Ill. May 6, 2021) (quoting *Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018)) ("[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration").

8

Plaintiff argues that the ALJ still erred in rejecting the July 3, 2022 opinion from his treating neurologist, Munther Quesi, M.D., that he can only be efficient for 70% of a workday. R. 1663. Dkt. 13 at 12. This argument fails because the ALJ fairly explained that the limitation was inconsistent with Dr. Quesi's statement that pain would rarely interfere with plaintiff's ability to concentrate, that he would be off-task 10% or less of a workday, and that he does not have any neurological impairments at all, much less ones that are disabling. R. 26, 1660, 1663. *See Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023) (citing *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008)) (ALJ may discount a physician opinion that is internally inconsistent).

The ALJ likewise did not commit reversible error in assessing Dr. Umar's June 23, 2022 opinion that plaintiff suffers from "multiple medical issues," including memory loss, that have a "great deal of effect" on plaintiff's day to day functioning. R. 881. As the ALJ noted, Dr. Umar did not provide any specific assessment of plaintiff's mental functioning and his treatment notes either recorded unremarkable mental findings or said nothing about that issue. R. 26, 870, 1183, 1191, 1193, 1202. *See Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021) (an ALJ may decline to credit a treating physician's opinion when it "is inconsistent with the physician's treatment notes.").

Rather than identify records showing greater mental deficits, plaintiff faults the ALJ for failing to mention the fact that he received a score of 19/30 on a Montreal Cognitive Assessment ("MOCA") test in August 2021. R. 700. Dkt. 13 at

9

10. To begin, that score signifies only mild impairment and can be impacted by effort. R. 544; https://mocacognition.com/faq/, archived at https://perma.cc/GJG3-X9LN. Moreover, the ALJ's RFC is based on an opinion from state agency psychological consultant Larry Kravitz, Psy.D., who explicitly discussed and considered the MOCA score. R. 25, 65.

Plaintiff also finds it significant that in March 2020, he complained of chronic headache and balance issues that, at hospital intake, were thought to be related to anxiety or complex migraine. R. 384. But again, plaintiff's treaters routinely documented normal mental functioning, and the July 2022 comprehensive neurological evaluation ruled out any migraine-related deficits. R. 1660. All that remains is a September 2021 record showing a normal EMG. R. 539. Plaintiff makes much of an observation that his gait and memory problems *could* have a "functional component." R. 544. But speculation is not evidence and plaintiff fails to articulate how the "functional component" language translates into a more restrictive mental RFC than the ALJ found. *See Ronald B. v. Berryhill*, No. 18 CV 4973, 2019 WL 2173776, at *5 (N.D. Ill. May 20, 2019) (a claimant must explain the significance of allegedly overlooked medical evidence and state how it "should have altered the ALJ's RFC analysis.").

Viewing the record as a whole, the ALJ did not commit reversible error in determining plaintiff's mental RFC. The ALJ's decision is supported by substantial evidence and does not provide a basis for remand. *See Salvador H. v. Kijakazi*, No.

22 CV 7254, 2023 WL 5017944, at *5 (N.D. Ill. Aug. 7, 2023) (citing *Biestek*, 587 U.S at 103) ("The 'substantial evidence' standard is not a high hurdle to negotiate").

### 2. Opinion Evidence

Plaintiff next argues that the ALJ improperly rejected the physical findings from Drs. Umar and Quesi and failed to consider the combined impact of his impairments. Dkt. 13 at 12-14; Dkt. 23 at 4. In making this argument, plaintiff ignores the fact that the ALJ's physical RFC determination mirrors the restrictions set forth by the state agency reviewers. That is, plaintiff can perform light work with: occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional bending, stooping, crouching, and crawling; limited exposure to temperature extremes, wetness, hazards, humidity, fumes, odors, dust and other pulmonary irritants; and an ability to shift positions every 30 minutes while remaining on task. R. 21, 25, 73-76, 92-94. *See Joseph M.*, 2019 WL 6918281, at *15.

Moreover, the ALJ gave good reasons for discounting the opinions from Drs. Umar and Quesi. Dr. Umar opined that plaintiff's lumbar radiculopathy with spinal stenosis, memory loss, and poor balance with numbness and tingling have a "great deal of effect" on plaintiff's mobility and day to day functioning. R. 881. Once again, the ALJ reasonably observed that Dr. Umar provided no specific assessment of plaintiff's physical functioning and his treatment notes documented minimal abnormalities. R. 26, 586 (normal exam including gait and station), 872 (same), 1192-93 (same). *See Pavlicek*, 994 F.3d at 781. The ALJ also noted that, contrary to Dr. Umar's assertion that multiple pain medications have provided limited relief,

11

plaintiff reported that medication has helped his back pain. R. 26, 44-46, 881, 1204 (November 2022 note from Dr. Umar stating that plaintiff's "symptoms are much improved as he has improved his compliance w/ his meds.").

As for Dr. Quesi, the ALJ found his opinion internally inconsistent. For example, he assessed no neurological impairments at all but concluded that plaintiff can stand for only three hours and sit for only four hours in an eight-hour workday. R. 26, 1660-62. And though in August 2021, Dr. Quesi documented some reduction to light touch, absence of vibration sense on the left side, unsteady gait, and absent proprioception and pinprick sensations, he also stated that the exam was not "fully . . . consistent with any particular pathology" and that plaintiff's sensation "change[d] when crossing the midline which is not consistent with a specific pathology." R. 534. Dr. Quesi recommended additional work up, R. 544, but diagnostic tests were generally normal aside from some mild to moderate cervical and lumbar stenosis and spondylosis. R. 539, 544-46, 1333. Plaintiff fails to explain how these tests evidence severe functional deficits.

Viewing the record as a whole, the ALJ reasonably considered all of plaintiff's impairments in combination and did not commit any reversible errors in evaluating the opinions from Drs. Umar and Quesi. "Although plaintiff may disagree with how the ALJ weighed the evidence and the conclusions the ALJ drew from that evidence, this Court does 'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's.'" *Bridget T. M. v. O'Malley*, No. 21 CV 50290, 2024 WL 4347193, at *2 (N.D. Ill. Sept. 30, 2024)

12

(quoting *Gedatus*, 994 F.3d at 900). Plaintiff's request to remand the case for further consideration of the opinion evidence is denied.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment [13] is denied, and the Commissioner's motion for summary judgment [21] is granted. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED.**

                                        **Jeannice W. Appenteng**
                                        **United States Magistrate Judge**

Date: 9/19/2025